Annie Smith, Esq.
Sarah Hymowitz, Esq.
LEGAL SERVICES OF NEW JERSEY, INC.
6 South Laurel Street
Bridgeton, NJ 08302
(856) 455-0017
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUIS HURTADO,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JUNG HWA SEO, EUN MI SEO, CANADA FARM, JOHN DOES 1-5, and ABC CORPORATIONS 1-5,<br><br>　　　　Defendants. | Civil Action No. 07-5124 (RBK)<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Luis Hurtado ("Plaintiff"), by and through his attorneys, states as follows:

### PRELIMINARY STATEMENT

Plaintiff brings this action to recover for damages inflicted by defendants Jung Hwa Seo and Eun Mi Seo (collectively referred to as "Seos") and Canada Farm (collectively, "Defendants"). Defendants exploited and abused Plaintiff by forcing him to labor on their New Jersey farm during the late summer and early fall of 2006. Upon

his arrival at their farm, Defendants used psychological coercion and threatened physical harm and abuse of the legal process to control Plaintiff.  Plaintiff was required to work long hours without rest under constant threats, including attacks by dogs, beatings, detention and deportation.  Forced to live in deplorable conditions, Plaintiff slept on wood and cardboard in an unventilated plastic shelter where agricultural chemicals were used. Defendants denied Plaintiff access to basic necessities such as potable water, plumbing, electricity and food. Defendants severely restricted Plaintiff's travel and communication with the outside world, made fraudulent claims about their ability to effectuate Plaintiff's arrest, imprisonment, and/or deportation by U.S. law enforcement authorities; withheld portions of Plaintiff's pay; and generally perpetrated a campaign of coercion and fraud designed to prevent Plaintiff from leaving their farm.  Isolated, disoriented, unable to speak English, and unfamiliar with his rights under U.S. law, Plaintiff was exploited by Defendants and felt powerless to escape.  He now seeks redress before this Court.

## JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1854(a), a federal question, this action arising under the Migrant and Seasonal Agricultural Worker Protection Act (AWPA); by 29 U.S.C. § 216(b), this action arising under the Fair Labor Standards Act (FLSA); by 18 U.S.C. § 1595(a), this action arising under the Trafficking Victims Protection Act (TVPRA); by 28 U.S.C. § 1337, this action arising under Acts of Congress regulating commerce, and by 28 U.S.C. § 1331, this action arising under the U.S. Constitution and federal laws.

2. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1332, diversity of citizenship, by which district courts of the United States have original jurisdiction over citizens of different states. Upon information and belief, upon initial filing of the initial Complaint, Defendants were citizens of the State of New York. Plaintiff is a citizen of the State of New Jersey. Upon information and belief, Defendants are now citizens of the State of New Jersey. The amount of controversy in this matter exceeds the sum or value of $75,000.

3. This Court has supplemental jurisdiction over the related state law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction over those claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the District of New Jersey and pursuant to 29 U.S.C. § 1854(a) because this Court has jurisdiction of the parties.

**PARTIES**

5. Plaintiff resided in Burlington County, New Jersey on Defendants' rented farmland during his employment for Defendants. Following his escape from Defendants and through the present, Plaintiff resides in Southern New Jersey. Plaintiff's full address is being withheld out of concern for his personal safety.

6. Upon information and belief, at the time of filing the initial Complaint, defendant Jung Hwa Seo ("Mr. Seo") resided at 504 Onderdonk Avenue, Apt. 2R, Ridgewood,

Queens, New York 11385.  Upon information and belief, Mr. Seo now resides at 701 Jacksonville Road, Burlington, New Jersey 08016. Mr. Seo employed Plaintiff as an agricultural worker during the period of approximately August through September, 2006.

7.	Upon information and belief, at the time of filing the initial Complaint defendant Eun Mi Seo ("Mrs. Seo") resided at 504 Onderdonk Avenue, Apt. 2R, Ridgewood, Queens, New York 11385.  Upon information and belief, Mrs. Seo now resides at 701 Jacksonville Road, Burlington, New Jersey 08016. Mrs. Seo employed Plaintiff as an agricultural worker during the period of approximately August through September, 2006.

8.	Canada Farm is a business entity owned by Mr. and Mrs. Seo whose business address is 701 Jacksonville Road, Burlington, New Jersey 08016. Upon information and belief, Defendants employed Plaintiff as an agricultural worker for Canada Farm during the period of approximately August through September, 2006.

9.	John Does 1 through 5 are fictitious names for individuals whose identities are unknown, who engaged in, participated in, and/or acted as supervisors and/or employers associated with the violations complained of herein.

10.	ABC Corporations 1 through 5 are fictitious names for business entities that may have operated as additional employers and/or be otherwise involved in the unlawful treatment of Plaintiff during the time period relevant to this action.

## FACTUAL ALLEGATIONS

11.	Plaintiff arrived at the Defendants' farm near Columbus, New Jersey in approximately August 2006.  Plaintiff had no previous relationship to the Defendants or their farm and was unfamiliar with the area in which the farm was located.

12.     Upon his arrival at the Defendants' farm, Plaintiff began working immediately.

## **Inhumane Living Conditions**

13.     Defendants forced Plaintiff to live with other workers in a plastic-covered "greenhouse" without ventilation, electricity, plumbing, water or windows.

14.     Plaintiff slept on wood pallets and cardboard placed on the dirt floor of the "greenhouse" because Defendants failed to provide proper beds.

15.     Defendants grew plants in same greenhouse where they housed Plaintiff.

16.     Defendants sprayed chemicals on the plants inside Plaintiff's housing.

17.     Defendants stored chemicals inside Plaintiff's housing.

18.     When he went to sleep at night, Plaintiff could sometimes smell the chemicals that were sprayed and stored there.

19.     Defendants did not provide Plaintiff with access to clean drinking water, so Plaintiff had to drink untreated water from a hole dug in the ground.

20.     Plaintiff suffered from regular stomachaches while living at the Defendants' labor camp.

21.     Defendant failed to provide Plaintiff with any bathroom. As a result, Plaintiff had to defecate and urinate in the woods.

22.     Since there was no plumbing, Plaintiff had to bathe with cold water from a small stream. Plaintiff sometimes suffered from skin irritation after he bathed.

23.     Defendants severely limited Plaintiff's access to food and other supplies. Each week, Defendants allowed just two workers living at the camp to go with them to a grocery store to purchase food for everyone.

24. Because there was no refrigerator, Plaintiff and the other workers could not buy enough food for an entire week and sometimes ran out of food.

25. Mr. Seo sometimes sold the workers packets of dry noodles when they had no other food.

26. Mr. Seo required Plaintiff and his co-workers to purchase fuel canisters from him to cook their meals.

27. The plastic greenhouse where Plaintiff slept was often cold. Mr. Seo eventually brought the workers a small propane heater, but they were not able to operate it. When Plaintiff and the other workers made a small fire to keep warm, Mr. Seo made them extinguish it because, as he explained, people outside of the surrounding rural area might think the farm was on fire and then the police might come and "get them."

28. Upon information and belief, Defendants did not request or receive the required government certification that Plaintiff's housing met the applicable health and safety standards prior to occupation.

29. Defendants did not post a housing certificate of compliance with the Migrant and Seasonal Agricultural Worker Protection Act or any information regarding the terms and conditions of occupancy in the housing site.

**Forced Labor, Threats, Coercion & Physical Isolation of Plaintiff by Defendants**

30. While working for Defendants, Plaintiff harvested vegetables and performed other farming-related tasks, including weeding.

31. Defendants generally required Plaintiff to work approximately nine to ten hours each day and seven days a week.

32. Mr. Seo sent repeated and strong messages to Plaintiff and the other workers that their freedom on his farm was extremely limited and that they had to abide by his rules, even beyond the length of the workday.

33. For example, Mr. Seo would sometimes enter Plaintiff's living quarters and pull the bedding off Plaintiff early in the morning if he wanted Plaintiff to get up and work.

34. During the course of the workday, Mr. Seo closely supervised the work of Plaintiff and the other workers on the farm and frequently became angry and screamed at Plaintiff and the other workers if they were not working at the speed he wanted.

35. At various times, Mr. Seo picked up a hoe or other tool and threatened to hit Plaintiff or the other workers. Plaintiff believed that Mr. Seo might strike him or the other workers.

36. Mr. Seo told Plaintiff and the other workers that they were not allowed to leave the farm until the work was finished for the season.

37. Defendants kept approximately nine dogs on their farm – some on chains, some caged, and some that were loose. Mr. Seo told Plaintiff that, if he or the other workers ever tried to escape, he would release the dogs to attack them. The dogs behaved aggressively towards Plaintiff and the other workers.  Plaintiff was afraid of being bitten or attacked by the dogs.

38. Mr. Seo threatened to call immigration enforcement to detain Plaintiff and the other workers if they tried to escape from the farm.

39. Defendants' farm had a chain link fence around it, and Defendants padlocked the only gate when they left.  The farm was also bordered by a high-speed highway, further limiting Plaintiff's access to exits from the farm.

40. Defendants told Plaintiff that he could not go outside of the gate because the neighbors would see him and call immigration enforcement and release dogs to attack him. The gate was the only means of egress from the farm that Plaintiff could identify.

41. Plaintiff was completely unfamiliar with the location of the camp and the surrounding area.

42. Plaintiff and the other workers did not have access to a vehicle that they could use.

43. Defendants withheld Plaintiff's first and last weeks of pay. Other workers explained to the Plaintiff that this was Defendants' attempt to ensure that he did not leave until the end of the season.

44. Plaintiff reasonably believed that Mr. Seo did not want Plaintiff or the other workers to communicate with anyone from the outside.

45. As a result of Defendant's words and actions, Plaintiff was afraid that, if he tried to leave, Mr. Seo or the farm's neighbors would hurt him physically or contact the police and immigration enforcement to deport him.

46. Upon information and belief, when Defendants' discovery that a concerned convenience store owner attempted to assist Plaintiff and the other workers by delivering food to them at the gate of the farm, the Defendants threatened the man and followed him in their vehicle.

47. Plaintiff secretly escaped the Defendants' farm with the assistance of concerned outsiders who became aware of his plight.

48. During the entire period of his employment, Plaintiff never left the Defendants' farm.

49.     As a result of Defendants' repeated threats of physical and legal harm, Plaintiff reasonably believed that he was not free to leave and that, if he attempted to escape, he would face dire consequences.

## Failure to Pay Proper Wages

50.     Plaintiff began working when he arrived at Defendants' farm.

51.     Defendants allowed and directed Plaintiff's work.

52.     Upon information and belief, Mrs. Seo recorded Plaintiff's name and work hours in a written log.

53.     Upon information and belief, the hours recorded in this log regularly did not reflect the actual hours Plaintiff worked.

54.     Plaintiff was told that he would be paid an hourly rate of approximately $7.00.

55.     Defendants regularly failed to pay Plaintiff for all the hours he worked.

56.     Plaintiff never received any pay for his first or last weeks of work.


## FIRST CLAIM FOR RELIEF

### Fair Labor Standards Act

57.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

58.     Defendants were "employers" within the meaning of the Fair Labor Standards Act at all times relevant to this action, pursuant to 29 U.S.C. § 201-219.

59.     Plaintiff was an "employee" within the meaning of the Fair Labor Standards Act at all times relevant to this action, pursuant to 29 U.S.C. § 201-219.

60. Defendants violated the rights of Plaintiff, in a willful violation, under the Fair Labor Standards Act, 29 U.S.C. §201-219, *inter alia*, by failing to pay the minimum wage for all hours worked, pursuant to 29 U.S.C. §201-219.

61. As a direct consequence of Defendants' violations of the Fair Labor Standards Act, Plaintiff suffered substantial injury.

62. As a consequence of the Fair Labor Standards Act violations described in this count, Plaintiff is entitled to recover the amount of unpaid wages due, and an equal amount as liquidated damages, and reasonable attorneys fees and costs, in accordance with 29 U.S.C. §216(b).

## SECOND CLAIM FOR RELIEF

### Migrant and Seasonal Agricultural Worker Protection Act

63. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

64. Plaintiff was a "migrant agricultural worker" at all times relevant to this action, pursuant to the Migrant and Seasonal Worker Protection Act ("AWPA"), 29 U.S.C. § 1802(8).

65. Defendants were "agricultural employers" at all times relevant to this action, pursuant to 29 U.S.C. § 1802(2).

66. By housing Plaintiff in conditions that failed to meet the applicable health and safety standards, Defendants violated 29 U.SC. § 1823(a).

67. On information and belief, by failing to request or receive the required government certification that Plaintiff's housing met the applicable health and safety standards prior to occupation, Defendants violated 29 U.S.C. § 1823(b)(1).

68. By failing to post a housing certificate of compliance, Defendants violated the AWPA, 29 U.S.C. § 1823(b)(1).

69. By failing to post a statement of the terms and conditions of occupancy in the housing site, Defendants violated the AWPA, 29 U.S.C. § 1821(c).

70. By failing to comply with a working arrangement, Defendants violated the AWPA, 29 U.S.C. § 1832(c).

71. By failing to pay Plaintiff his wages when due, Defendants violated the AWPA, 29 U.S.C. § 1832(a).

72. On information and belief, by failing to make, keep and preserve payroll records for the Plaintiff, Defendants violated the AWPA, 29 U.S.C. § 1821(d)(1).

73. By failing to provide Plaintiff with itemized pay statements, Defendants violated the AWPA, 29 U.S.C. § 821(d)(2).

74. By failing to post the required notice at the jobsite stating workers' rights under the AWPA, Defendants violated 29 U.S.C. § 821(b).

75. The violations of the AWPA as set forth above were the natural and foreseeable consequences of conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA, 29 U.S.C. § 1854(c)(1).

76. The Defendants' failure to comply with the AWPA caused the Plaintiff to suffer damages.

77.   As a result of Defendants' violations, Plaintiff may maintain a private right of action pursuant to 29 U.S.C. § 1854 and is entitled to recover actual and/or statutory damages as well as injunctive and other equitable relief.

## THIRD CLAIM FOR RELIEF

### New Jersey Wage and Hour Law

78.   Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

79.   At all times relevant to this action, Plaintiff was an "employee" within the meaning of the New Jersey Wage and Hour Law, pursuant to N.J.S.A. §34:11-56(a)(1).

80.   At all times relevant to this action, Defendants were "employers" within the meaning of the New Jersey Wage and Hour Law, pursuant to N.J.S.A. §34:11-56(a)(1).

81.   Defendants violated the rights of Plaintiff under the New Jersey Wage and Hour Law, N.J.S.A. §34:11-56(a) et seq., by failing to pay minimum wage for all hours worked.

82.   As a direct consequence of Defendants' violations of the New Jersey Wage and Hour Law, Plaintiff suffered substantial injury.

83.   Plaintiff may maintain a private right of action and appeal against the Defendants under N.J.S.A. §34:11-56(a)(25) to recover the amount of their unpaid minimum and promised wages, plus costs and reasonable attorney's fees.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

84. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

85. Defendants entered into an employment contract with Plaintiff whereby Plaintiff would perform work for Defendants on their farm in return for monetary compensation and room and board.

86. Plaintiff performed under the contract by working for Defendants.

87. Defendants willfully and intentionally violated the terms of the employment contract.

88. Defendants breached the contract of employment by failing to compensate Plaintiff properly.  Defendants further breached the contract by providing substandard housing for Plaintiff.

89. As a direct result of Defendants' breach of the employment contract, Plaintiff suffered substantial injury.

90. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### FIFTH CLAIM FOR RELIEF

#### Unjust Enrichment

91. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

92. Plaintiff performed work for Defendants in good faith and with the reasonable expectation that he would be compensated for his work.

93. Defendants instructed, supervised, and accepted Plaintiff's services.

94. Defendants failed to compensate Plaintiff for his work.

95. Plaintiff conferred a benefit on Defendants. Defendants have been unjustly enriched at Plaintiff's expense.

96. Plaintiff is entitled to recover damages in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF

### False Imprisonment

97. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

98. Defendants knowingly and willfully restrained Plaintiff through threats of physical violence and abuse of legal process so as to deprive Plaintiff of his liberty and force him to continue working for Defendants.

99. Defendants committed this act maliciously, with the wrongful intention of causing harm to Plaintiff.

100. As a proximate result of Defendants' conduct, Plaintiff suffered significant damages in an amount to be proven at trial.

101. Plaintiff is entitled to recover additional damages in an amount to be proven at trial.

### SEVENTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

102.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

103.    Defendants engaged in outrageous conduct toward Plaintiff that they knew or should have known would cause Plaintiff severe emotional distress.

104.    Defendants' outrageous conduct which intentionally inflicted emotional distress upon Plaintiff included, but is not limited to: the use of physical and mental coercion to induce Plaintiff to perform manual labor; threatening the use of physical violence against Plaintiff; threatening the abuse of legal process against Plaintiff; and Defendants' refusal to allow Plaintiff to move about freely.

105.    As a result of Defendants' actions, Plaintiff suffered emotional harm.

106.    Defendants' conduct was extreme, outrageous, intentional, and performed with a reckless indifference to the interests of Plaintiff.

107.    Plaintiff is entitled to monetary relief for compensatory and punitive damages in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF

### Assault

108.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

109.    Mr. Seo intentionally caused Plaintiff to feel reasonable apprehension of imminent apprehension of offensive physical contact.

110. As a direct and proximate result of Defendants' actions, Plaintiff sustained damages.

111. Plaintiff is entitled to recover damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

### Trafficking Victims Protection Act ("TVPA")
### Forced Labor, 18 U.S.C. § 1589

112. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

113. Defendants subjected Plaintiff to forced labor in violation of 18 U.S.C. § 1589.

114. Defendants subjected Plaintiff to verbal abuse and repeatedly threatened physical abuse in order to coerce Plaintiff to work and prevent him from leaving Defendants' employ in violation of 18 U.S.C. § 1589.

115. Defendants monitored and controlled the movements and actions of Plaintiff in order to prevent him from leaving Defendants' employ in violation of 18 U.S.C. § 1589.

116. Defendants threatened Plaintiff with abuse of legal process in order to coerce him to remain in Defendants' employ in violation of 18 U.S.C. § 1589.

117. By obtaining the labor of Plaintiff through serious threats of harm, the use of physical restraint, and threatened abuse of the law for the purpose of subjecting Plaintiff to involuntary servitude, Defendants engaged in trafficking of Plaintiff in violation of 18 U.S.C. § 1589.

118. Plaintiff may bring a civil cause of action under the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595.

119.     As a direct and proximate result of Defendants' actions, Plaintiff sustained severe harm, including physical injury, emotional distress, and economic losses.

120.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

### TENTH CLAIM FOR RELIEF

**Trafficking Victims Protection Act ("TVPA")**
**Human Trafficking, 18 U.S.C. § 1590**

121.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

122.     Defendants subjected Plaintiff to human trafficking in violation of 18 U.S.C. § 1590.

123.     Defendants harbored Plaintiff and obtained the labor services of Plaintiff in violation of the Trafficking Victims Protection Act by employing verbal abuse, threats of physical harm, and threats of abuse of the legal process to coerce Plaintiff to work and prevent him from leaving Defendants' employ.

124.     By employing serious threats of physical harm, verbal abuse, threats of abuse of the law, and physical restraint for the purpose of preventing Plaintiff from leaving Defendants' property and subjecting Plaintiff to involuntary servitude, Defendants engaged in trafficking of Plaintiff in violation of 18 U.S.C. § 1590.

125.     Plaintiff may bring a civil cause of action under the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. § 1595.

126.     As a direct and proximate result of Defendants' actions, Plaintiff sustained severe harm.

127. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

### Alien Tort Claims Act, 28 U.S.C. § 1350

128. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

129. This Court has jurisdiction over these violations of international law pursuant to 28 U.S.C. § 1350.

130. Defendants subjected Plaintiff to forced labor, involuntary servitude, and human trafficking in violation of international law, as expressed in multilateral treaties and other international documents and authorities, including, *inter alia*:

   a. Universal Declaration of Human Rights, U.S., Dec. 10, 1948, U.N. General Assembly, G.A. Res. 217A, U.N. GAOR, 3rd Sess., Pt. 1, Resolutions, at 71, U.N Doc A/810 (1948);

   b. The International Covenant on Civil and Political Rights, U.S., June 8, 1992, 993 U.N.T.S. 171;

   c. The American Convention on Human Rights, U.S., June 1, 1977, 1114 U.N.T.S. 123;

   d. Additional Protocol to the American Convention on Human Rights in the Area of Economic, Social and Cultural Rights, concluded at San Salvador, Nov. 17, 1988, O.A.S.T.S. No. 69; and

  e. The Supplementary Convention on the Abolition of Slavery, the Slave Trade, and Institutions and Practices Similar to Slavery, Apr. 30, 1956, 266 U.N.T.S. 55;

  f. The Convention Concerning the Abolition of Forced Labor (ILO No. 105), June 25, 1957, 320 U.N.T.S. 291.

  g. Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Transnational Crime, art. 1, Nov. 15, 2003, 55 U.N. GAOR Supp. (No. 49) at 60, U.N. Doc. A/45/49 (Vol. I) (2001), 40 I.L.M. 335.

131. Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

  a. Compensatory damages;

  b. Punitive damages;

  c. Emotional distress damages;

  d. Costs of suit;

  e. Civil penalties as prescribed by law;

  f. Statutory damages;

  g. Attorney's fees;

  h. Such other relief as this Court deems equitable and just.

Plaintiff demands a trial by jury.

Dated: September 26, 2008    By:

        s/ Annie Smith
        Annie Smith, Esq.
        Sarah Hymowitz, Esq.
        LEGAL SERVICES OF NEW JERSEY, INC.
        6 South Laurel Street
        Bridgeton, NJ 08302
        (856) 455-0017

        - and -

        Gina M. Sarracino
        LOWENSTEIN SANDLER, PC
        Attorneys at Law
        65 Livingston Avenue
        Roseland, NJ 07068
        (973) 597-2500

        *Attorneys for Plaintiff Luis Hurtado*